## SUPREME COURT.

### DUNDASS T. PRATT and others agt. THOMAS B. CHASE.

A *discharge* under the *insolvent laws* of this state (known as the two-third act), granted to a citizen of this state, is a *bar* to an action against him by a *citizen of another state*, upon a contract made in that state to be executed *within this state.* (*This appears to be adverse to the case of Baldwin agt. Hale, and cases there cited, United States supreme court, Am. Law Reg. June,* 1864, CLIFFORD, *J.*)

*New York General Term, February,* 1865.

*Before* INGRAHAM, P. J., CLERKE *and* SUTHERLAND, *Justices.*

THE plaintiffs, residents of Pennsylvania, sued upon three promissory notes bearing date at Philadelphia, Pennsylvania, and payable at White's Bank, in Buffalo, New York. Defendant interposed a discharge under the act known as the two-third act, since said debt was incurred. The plaintiffs contended that the discharge was no bar to this action.

The above cause having been tried before me, without a jury, by consent of the parties, and thereupon submitted, I find as follows: That the facts stated in the complaint and answer are true, and that the discharge stated in the answer is a bar to the plaintiffs' recovery.

I therefore order judgment to be entered for the defendant with costs. H. WELLES.

Dated New York, May 17, 1862.

From this order the plaintiffs appealed.

JOHN FITCH, *for appellants.*

The defendant's discharge under the two-thirds act is void, for the following reasons, namely:

*1st.*—I. What purports to be the affidavit of the publication in the state paper, is not an affidavit, because it is not signed by the deponent; the oath is not binding, as no perjury could be charged upon such a paper, consequently

there is no *proof* of such publication. By every definition of an affidavit, *it must be signed.* (2 *Sand.* 648, *and cases cited;* 16 *Barb.* 319 ; 2 *Kern.* 375; 2 *Sand.* 648 ; 2 *Abb.* 175 ; *Whitaker's Practice, vol.* 1, *p.* 166, *and the cases there cited ;* 2 *R. S. chap.* 17, *art.* 3, § 178 ; 14 *Abb.* 45.)

II. By the affidavit of G. C. Stimson, of the publication in the New York Day Book, " the first publication was May 28th, 1859," which leaves only sixty-three days between the first publication and July 30th, 1859, the day the affidavit was made, which gave the judge no jurisdiction to grant the discharge. (*Small* agt. *Wheaton,* 2 *Abb. Pr. R.* 175, *and particularly noticed at bottom of page* 179 ; *Demarest* agt. *Gray,* 10 *Abb. p.* 468 ; *Anon.* 1 *Wend. p.* 90 : 9 *Abb. p.* 374, *decides that the publication must be seventy days ; Stanton* agt. *Ellis,* 16 *Barb. Sup. C. R.* 399; *affirmed in* 2 *Kern.* 575. A *fatal defect as to time* of newspaper notice. Affidavit shows creditors residing more than one hundred miles, ten weeks necessary, by *article* 14, 3 *R. S.* In same cases in Boston, only nine weeks notice given.

III. Variance in the title of the newspaper printed in New York, in which the judge ordered the notice to be published, and that in which the proof of publication says it was published. The order was for the " newspaper entitled the Evening Day Book," the proof is of its publication in " the New York Day Book." An omission also occurred in both the Day Book and Brooklyn Daily Eagle notices. In the former, the words " part 2 " are left out, in describing the Revised Statutes, under which the proceedings were had, and in the latter were left out the words " of the 5th chapter." These omissions render the notice vague and uncertain, and are an essential defect.

2*d.*—IV. There is a want of proper specifications in the affidavits of the petitioning creditors, as to the nature of their debts, how and for what they arose, when and where, and who were the parties ; the consideration and character of the indebtedness ; accounts not annexed as copies thereof,

&c.   All and each of these should appear on the papers, and without a full and proper statement thereof, the intent to defraud is fairly inferable, and need not be proved. (*Slidell* agt. *McCrea,* 1 *Wend.* 156; *Small* agt. *Wheaton, p.* 179, *midway of the page*; *McNair* agt. *Gilbert,* 3 *Wend.* 344.)   For instance, in the affidavit of William Wilson, one of the petitioning creditors, it does not appear when or where the indebtedness arose, for what, nor the price, nor with whom the contract was made, nor any circumstance showing whose debt it is unless it be Smith's.

The same objection to the affidavit of Samuel Suydam; and the same objection is even more pertinent to that of William Munger, who swears that his claim is "for goods, wares and merchandise, sold and delivered, and various stocks secured by indorsement of note drawn by Mr. Smith, now due and payable," without specifying the particulars of the transaction, or annexing the original or copy evidence of indebtedness.   The only inference which can be drawn from such a vague and imperfect statement is, that it was a transaction between Munger and Smith.   Mr. Munger gives no date or place of sale; does not say who bought or who sold, what kind of stocks, or what description of goods, &c.; whether sold at one or ten different times; no date of note, or time of credit.   A most indefinite and uncertain statement.   (2 *R. S.* 199, § 7; 2 *Hilton,* 338.)   Such statements would not uphold a judgment upon confession.   (3 *Abb.* 375; *Freleigh* agt. *Brink,* 16 *How. Pr. Rep.* 272; 12 *Id.* 410.   *Lockwood* agt. *Finn et al.* (13 *How.*), decides the particular point in question.   (*See also* 2 *Kern.* 245; 1 *Wend.* 156.)   Then how much more full, precise and particular, should every such statement be made in a case where the parties' just claim is to be swept away by a judicial statutory proceeding.

3*d.*—V.   The defendant's discharge is invalid as to this cause of action, because the plaintiffs, parties to the contract, were residents of another state.   The note was dated

in another state. Section 35 of the act has received the following conclusive adjudications: (3 *Seld.* 500; 2 *Wend.* 457; 12 *Id.* 102; 19 *Id.* 151 *and* 630; 3 *Paige*, 338; 5 *Hill*, 244; 3 *Coms.* 217; 12 *Wheaton*, 213 *and* 369; 6 *Peters*, 349 *and* 635; 3 *Story on Constitution*, 256; 10 *Metcalf*, 594; 10 *Abb.* 246; 4 *Wheat.* 209; 5 *How. U. S. Rep.* 295; 8 *Barn. & Cress.* 477; 4 *Barnwell & Aldrich*, 654; 6 *Johns. Ch. R.* 59; 4 *Wheaton*, 122; 10 *Abb.* 246; 2 *Story*, 383; 9 *Abb.* 404; *Baldwin* agt. *Hale, Am. Law Reg. June*, 1864.)

VI. The discharge does not set forth that the due proof was furnished of the notice having been given as required by law, personally or by mail, twenty or forty days before the day of showing cause. It seems that the clause on that point is erased from the printed blank used as the discharge. Several of the creditors said to have been "personally served," are ready to swear that no such notice was ever given to them. Schedule not signed, and petition not sworn to by any one.

BOGARDUS & BROWN, *for respondent.*

I. The principal objection to the discharge is that it is invalid against a non-resident of this state. The precise point involved in the present case is whether the state courts of New York shall lend their aid in enforcing a contract to be performed in New York, in favor of a non-resident plaintiff, against a debtor duly discharged by the New York insolvent laws. This statement of the point of itself, excludes every case cited by the plaintiff under his point V (*folio* 110, *case*), as inapplicable. This is to be treated as a New York contract (*see Cook* agt. *Maffit*, 5 *How. U. S.* 295).

The case of *Parkinson* agt. *Scoville* (19 *Wend.* 150), is a case exactly in point in favor of the validity of the discharge. In *Witt* agt. *Follett* (2 *Wend.* 457), the contract was made and to be performed in Vermont. The case of

*Donnelly* agt. *Corbett* (3 *Seld.* 500), though in some sentences uses language broad enough to cover this case, really does not apply, because the remedy was sought not in South Carolina, where the discharge was made, but in New York, and Justice GARDINER expressly recognizes the distinction. He says, at the outset, " such laws are valid so far as they affect the remedy " (*p.* 503), *i. e.*, in the state courts where the discharge is granted, but we are not required, he says (*see p.* 506), " to give that law an extra territorial effect," which concedes as a matter of course, that in the South Carolina state courts the discharge would be held good as against the plaintiff.

We concede that the notes in suit could be prosecuted in Massachusetts or Pennsylvania, and the discharge could not be set up against them as a bar. The precise point here has never come up in this state except in *Parkinson* agt. *Scoville* (19 *Wend.* cited above), where the contract was to be performed here, and the discharge was held good.

In Massachusetts the precise point has also been decided in three different cases, exactly parallel—*i. e.*, where the notes were expressly made payable in Massachusetts by a debtor there, though dated in another state, and the discharge was held good. (*Burrill* agt. *Rice* 5 *Gray* [*Mass.*], 539 ; *Capers* agt. *Johnson, Id. note* 539 ; *Scribner* agt. *Fishers*, 2 *Gray* [*Mass.*], 43.) These Massachusetts cases, with *Parkinson* agt. *Scoville* (*cited above*), ought to be deemed conclusive in this case. *Donelly* agt. *Corbett* (3 *Seld.*), does not pretend to overrule either ; it simply decides what many other cases also decide, that a suit can be maintained in a state which did not grant the discharge—*i. e.*, that the local law of that state has no extra territorial effect, and certainly does not require its enforcement. The local law of discharge takes away the remedy in the state courts of the state which granted the discharge, but does not operate in actions brought out of the state, as against non-residents.

The case of *Baldwin* agt. *Hale* (*p.* 462, *of June*, 1864,

*number of Am. Law Reg. vol.* 3, *No.* 8, *new series*), does not in any manner conflict with these views, and decides that " a certificate of discharge cannot be pleaded in bar of an action brought by a citizen of another state in the courts of the United States." It is true, " common justice requires that no man shall be condemned in his person or property without notice, and an opportunity to make his defence." The discharge of an insolvent does no such injustice to non-resident creditors. It does not deprive them of the right of action in courts of other states, but the courts of this state having jurisdiction of contracts to be performed in this state, have a right by the laws of the state, to discharge a citizen thereof from those contracts against all persons, so far as her jurisdiction extends, and no further.

II. We reply briefly to the other objections : Signature to affidavits not necessary, no statute requires it—good under the decisions. (*Haff* agt. *Spicer*, 3 *Cai.* 190 ; *Colen, &c.*, 495 ; *Jackson* agt. *Virgil*, 3 *Johns.* 540.) *Hathaway* agt. *Scott* (11 *Paige*), to the contrary, relates merely to matters of practice in chancery, following a very old rule of chancery practice, having nothing to do with statute affidavits. The publication was sufficient. The cases cited by plaintiffs were altogether different from the present. *In re Underwood* (3 *Cow.* 59), the publication was but six weeks instead of ten, and the affidavit was of publication for six weeks only. Here the affidavit swears to ten weeks publication, and the date given afterwards, at most only introduces an ambiguity. The fact of ten weeks publication is conceded. No discharge was ever vacated on such a frivolous pretext. Besides, this objection ought probably to be taken on certiorari.

*Rusker* agt. *Sherman* (28 *Barb.* 416), decided at general term, first district, opinion by INGRAHAM, J., declares (*semble*) that none of these objections can be taken collaterally, but only on certiorari ; that upon original jurisdiction being

shown to be complete, the discharge is conclusive that all subsequent steps and proofs were taken and furnished, until vacated by direct proceedings by certiorari for that pur- pose.    Accordingly we find that all the cases cited by plaintiffs, which have any bearing on the question, were on proceedings by certiorari, or else the objection was not taken.   We ask special attention to this case (28 *Barb.* 416), and the opinion of Justice INGRAHAM.   All the fol- lowing points of plaintiffs (except points IV and V), are palpably within the express decision of *Rusker* agt. *Sher- man* (28 *Barb.* 416), and cannot be availed of in this suit. (*See also* 24 *Barb.* 649 ; 2 *Kern.* 575 ; 12 *N. Y.* 579.)

III. The specifications on the affidavits are fully up to the requirements of the act under which defendant's dis- charge was granted.   (*Taylor* agt. *Williams*, 20 *Johns. R.* 21 ; *In matter of Hurst,* 7 *Wend.* 239 ; *McNair* agt. *Gilbert,* 3 *Wend.* 344.)

The judgment should be affirmed.


By the court, CLERKE, J.   The preliminary objections made to the proceedings upon which the discharge is founded, if tenable at all, with the exception of the fourth, could be taken advantage of only by certiorari, and not in this collateral manner.   As to this fourth objection, undoubt- edly in order to give the officer jurisdiction, it is necessary that the affidavits of the petitioning creditors should show the amount, nature and consideration of the debt, and that the creditor has received nothing to become a petitioner. The affidavits of the petitioning creditors in this case con- tain all these requisites ; the objection is entirely untena- ble.   The objection to the discharge itself is equally unten- able ; it recites all that is necessary to give the officer juris- diction.   The only serious question, therefore, is, whether creditors residing in another state at the time the contract was made, and still residing there, are entitled to recover in the courts of this state, when the defendant afterwards

obtained a valid discharge from all his debts, under the act entitled, " of voluntary assignments made pursuant to the application of an insolvent and his creditors." Two of the promissory notes on which this action is founded, were made in Philadelphia,—the third was made in Buffalo, in this state; but the three, by express terms, were payable at White's Bank, Buffalo. The decisions upon this subject, appear to me unsettled, if not conflicting, although the language employed by the judge who delivered the opinion of the court in *Donnelly* agt. *Corbett* (3 *Seld.* 500), is so general as to appear first to be an analogous case, but it is in reality very different. The discharge in that case was obtained in South Carolina; the petitioner was a resident of this state, and brought his action in the courts of this state. The discharge of course could be no bar to an action in this state, brought by one of its residents. It could not be pretended that any such discharge could have an extra territorial effect.

*Parkinson* agt. *Scoville* (19 *Wend.* 150), is very similar to the case before us. The petitioner, who was never a resident of this state, brought his action here. The contract was made, and was to be performed in this state. The discharge was decided to be available in all cases where the contract was made within this state, or where the contract was to be performed within this state. Indeed, the act (§ 30) makes it expressly applicable to any contracts to be executed within this state. *Burrill* agt. *Rice* (5 *Gray*, 539); *Capus* agt. *Johnson* (*Id. note to* 539); *Scribner* agt. *Fisher* (2 *Gray*, 43), are cases precisely similar to this. The notes were made payable in Massachusetts, by a debtor there, though dated in another state, and the discharge was held to be a bar in Massachusetts. Of course, when contracts are made between citizens of the same state, they are made in reference to the existing laws of the state. It is a well established principle also, when contracts made in one country are to be performed in another,

the law of the latter governs not only in regard to the construction, but in regard to the remedy, when it is sought there. If the act in question merely affected the remedy, we would, therefore, have no difficulty in deciding in favor of the efficacy of the discharge in the case before us. In form at least, it absolves the debtor from the performance of his contract. As far as this state is concerned, the act under which this discharge was granted is a bankrupt law, exonerating the debtor from all further liability in this state; but as far as the residents of the other states are concerned, does it do anything more than affect the remedy? When they come here and bring actions in our courts, they seek a remedy against a citizen of this state for the non-performance of a contract which he promised to perform within this state. But the insolvent act itself expressly says, that the discharge shall apply not only to contracts made within this state, but to those which are to be executed within it. It has no qualification, and makes no distinction between residents and non-residents, and when non-residents think fit to enter into a contract to be performed in this state, by a resident of it, I can see no good reason founded on comity or constitutional law, why the discharge. should not be effectual, when the contract is sought to be enforced through the instrumentality of the courts of this state. In accordance with general principles of jurisprudence, I can discover no reason why laws of this nature should not be held valid within the territorial limits of the state by which they are passed, even when they act upon contracts made in another country, or upon citizens. of another country; although beyond the limits of the state they have no force, except such as may be given to them by comity. When the contract was to be executed within the state, the reason is still stronger why the discharge should be recognized as an available defence in all cases, when the redress is voluntarily sought in the courts of the state. I am aware that it has been decided in the supreme

court of the United States (*Cook* agt. *Moffatt*, 5 *How. U. S.* 295), that the insolvent law of Massachusetts could not discharge one of its own citizens from a contract to be executed in New York, made with citizens of that state. The suit was brought in Maryland. The principle of the decision.was, that the contract and the remedy should be governed by the law of the place where it was to be executed. So that I may say with SAVAGE, Chief Justice, in *Van Hook* agt. *Whitlock* (26 *Wend.* 54): ".I am not aware that it has been directly determined by any case in the supreme court of the United States, that the discharge would not be a bar against a citizen of another state, when the suit is brought in the court of the state in which it was granted, and upon a contract made therein posterior to the law." I add, or to be executed therein posterior.to the law.

The judgment should be affirmed, with costs.