AMANDA B. HALE, Administratrix, and SAMUEL MERRY, Administrator of GEORGE MERRY, deceased, Appellants, *v.* GOUVERNEUR M. SWEET, ADDISON R. SWEET and BYRON BENSON, Sheriff of Onondaga County, Respondents.

Where, in proceedings to obtain a discharge under the "Two-Thirds Act," the affidavit of the insolvent debtor, annexed to his petition and the schedule of his property, under section seven of the act, states, "I have not, at any time, or in any manner whatever, disposed of, or made over, any part of my estate for the future benefit of myself *and* family," instead of using the words of the statute, "for the future benefit of myself *or* family." *Held,* that it was deficient, the discharge granted upon such proceedings void, and that judgments, previously recovered against the debtor, remained in full force.

In an action, brought by the mortgagee of a chattel, subsequently acquired by the debtor, against the sheriff and judgment creditors, for its taking under executions, issued upon their judgments, the invalidity of the discharge may be taken advantage of by the defendants, in justifying under their levy.

Where a chattel mortgage is not filed, until after the delivery of an execution to the sheriff, it is void as against the latter, although actually filed before a levy has been made.

(This cause was argued on the 6th of January, 1869, and decided on the 18th of March, 1869.)

THIS was an action, brought by the plaintiff's testator, George Merry, to recover the possession of the canal boat "O. H. Smith," seized at Syracuse, by the defendant Benson, sheriff of Onondaga county, under an execution issued upon a judgment in favor of the defendants Sweet against one Jones.

It appeared that the original plaintiff, George Merry, built the boat, and, in September, 1861, sold one-half of her to Jones for $250. He took property in part payment and the notes of Jones secured by a chattel mortgage of Jones upon the share of the boat sold to him for the balance of the purchase price. This mortgage, by its terms, authorized the mortgagee, if at any time he deemed himself unsafe, to take possession of the property and sell the same at public or private sale, and apply the proceeds to the payment of the debt.

The judgment of the defendant, Sweet, against Jones, was recovered on the 5th of November, 1859. In 1860, Jones took proceedings, under the "Two-thirds Act," to obtain his discharge as an insolvent, and on the 13th of October, 1860, he obtained a discharge. In his affidavit, annexed to the petition and schedule, required by the section seven of the statute (2 R. S.,18), he states, that he had not disposed of, or, made over any part of his estate, "for the future benefit of myself, and family."

After the mortgage was given to Merry, he, and Jones, ran the boat together, each furnishing one-half of the team, and Jones, being master, until the 7th day of October, 1862, when Merry employed one Hatch, to take charge of the boat, and run it. Jones, however, still often came on board, occasionally attended to the procuring the clearances, which were

in his name, as captain, and collected some of the freight earned.

On the 29th of October, 1862, a transcript of the Sweet judgment was filed in Onondaga county, and an execution upon it, was delivered to the sheriff of Onondaga county; on the 31st of October, the boat came into that county; on. the 1st of November, 1862, the mortgage was, for the first. time, filed ; and on the 14th November, 1862, the levy was made.

The judge, who tried the cause, directed a verdict for the defendant, on the ground that, the discharge was void, and. that, even if the exclusive possession taken, by the mortgagee,. before the delivery of the execution, to the sheriff, would give him the better title, there was no sufficient evidence, to go to the jury, that such possession had been taken.

The General Term of the Supreme Court, in the fifth judicial district, ordered judgment for the defendants upon the verdict, and the plaintiff appealed to this court.

*Daniel Pratt*, for the appellants.

*Charles Andrews*, for the respondents.

GROVER, J.    It was necessary for the defendant to show a valid judgment against Jones, upon which the execution, levied upon the boat, was issued.    If the discharge of Jones, from his debts, was valid, under the provisions of article 3, title 1, chapter 5, part 2d, R. S., pursuant to which, it was claimed to have been given, the judgment against him was discharged, and the defense failed.    The defendants claimed, that the discharge was void, for want of jurisdiction in the officer granting it, for the reason, that the affidavits of some of the petitioning creditors failed to show the consideration of the debts due to them, respectively, and, that the affidavit of Jones, annexed to and delivered with his petition, was not in compliance with the 7th section of the act.    It was held, by this court, in *Stanton* v. *Ellis* (2 Ker., 575), that the discharge was not conclusive evidence of the facts necessary to give the officer jurisdiction, and that it might be avoided, in

a collateral action, by proof of the non-existence of such facts. In the present case, the affidavit of Jones, annexed to his petition, stated that he had not, at any time, or in any manner whatsoever, disposed of, or made over, any part of his estate, for the future benefit of himself and his family, while the seventh section requires, that the affidavit should state that he had not done any of those acts for the future benefit of himself or his family. It is a rule, in the construction of statutes, and other written instruments, that the word " and," may be construed to mean " or," and the latter as meaning the former, when the sense gathered from the context obviously requires it. But, I do not think that rule can be applied to the affidavit in question. It is obvious, that a disposition of property, for the joint benefit of the affiant and his family only, is negatived by the affidavit. I think it clear, that Jones could not be convicted of perjury, upon proof that he had disposed of property, for his own future benefit, or that he had made the like disposition for the future benefit of his family only. If right in this, it follows, that the discharge was void, and the judgment remained in full force. The execution was delivered to the sheriff, on the 29th October. It then became a lien upon all the personal property of Jones, liable to a levy, then in the county, and upon all such as should come into the county during the life of the execution, valid and effectual against every one except *bona fide* purchasers from Jones. (2 R. S., 645, §§ 13, 17.) The boat in question, came into the county on the 31st of October. The plaintiff's mortgage, at that time, had never been placed on file, as required by the statute. Its subsequent filing was wholly ineffectual, as against the lien acquired by the execution. It is claimed by the counsel for the plaintiff, that the omission to file the mortgage, was obviated by the plaintiff's taking possession of the boat, before the delivery of the execution to the sheriff, or that the evidence was, at least so conflicting upon this point, that the judge erred, in not submitting the evidence to the jury, to find whether such possession had been taken. It was proved, upon the trial, that the

plaintiff built the boat. That he sold one-half to Jones, and took a mortgage thereon, to secure a portion of the purchase money. That it was agreed, between the plaintiff and Jones, that the boat should be run on their joint account, each to furnish half of the team, and that Jones should act as master. This agreement had not been terminated, at the time of issuing the execution by the plaintiff. The boat was run by Jones pursuant to the agreement, until the 7th October, about three weeks before the issuing of the execution, when, as Hatch testifies, the plaintiff employed him to take charge of the boat, and run it. That, upon that day, he went on board, and thereafter run the boat, as captain, and controlled her, until the close of navigation. He further testified, that Jones, collected the freight, earned after he went on board, discharged hands from the boat, and that the clearances of the boat continued to be taken in the name of Jones, as captain. This evidence, taken as a whole, failed to show that the plaintiff had taken possession of the boat, to the exclusion of Jones, and the Judge, properly, directed a verdict for the defendant. It is not necessary to determine what effect the taking of possession, as claimed by plaintiff, would have had upon the rights of the parties. The judgment appealed from must be affirmed.

James, J. (dissenting.) It is quite clear, that the discharge presented, was of no avail. The officer granting it did not have jurisdiction of the parties.

An insolvent can only be discharged of his debts, under our State laws, by proceedings under article 3, title 1, chapter 5, part 2 of the Revised Statutes, and jurisdiction to set the officer in motion can only be by petition, signed by at least two-thirds in amount of his creditors. Section 11, article 7, of the same title (2 R. S., 37), declares, that a creditor, who has, in his own name, or in trust, any mortgage, judgment, or other security, for securing the payment of any sum of money upon any real or personal estate of the debtor, in respect to whom, or whose estate, he is a petitioner, cannot,

under said third article, become a petitioner in respect to the debt so secured, unless he shall add to his signature to the petition a declaration, in writing, that he relinquishes to the assignees, or trustees, who shall be appointed, pursuant to said petition, such mortgage, judgment, or other security, for the benefit of all the creditors of such debtor. Two of the petitioning creditors had their claims in judgment; their petition contained no such declaration or relinquishment, as required by said eleventh section of the statute; hence, as to the debts so secured, they were not petitioners, and, without those two sums, the petition did not contain two-thirds in amount of all the creditors of the insolvent. The officer was not, therefore, invested with jurisdiction to entertain the proceedings, or grant the discharge. (*Morewood* v. *Hollister*, 6 N. Y., 309, 330.)

These proceedings, upon their face, were also deficient in another particular necessary to invest the officer with jurisdiction. The affidavit of the insolvent did not conform to the requirements of the statute, in an important and material particular. The theory of the statute is, that upon the surrender by an insolvent, of all of his estate, for the benefit of his creditors, he may be discharged from his debts on the petition of two-thirds. To ensure such surrender, the insolvent is required to annex to his petition an affidavit, that the account of his creditors, and the inventory of his estate, annexed, are true, and that he has not, at any time, or in any manner whatever, disposed of, or made over, any part of his estate, for the future benefit of himself or his family, &c. (2 R. S., 17, § 7.) The affidavit of the insolvent, annexed to the petition, was in the conjunctive instead of the disjunctive, so that, even though he had made over the whole of his property for the future benefit of himself, or his family, the affidavit would be true, and the purpose of the statute defeated. (*Rusher* v. *Sherman*, 28 Barb., 416; 1 Selden, 107, 117; *Stanton* v. *Ellis*, 2 Kern., 575.)

Whenever an execution is issued, against the property of a judgment debtor, his goods and chattels, within the jurisdic-

tion of the officer, to whom the execution is delivered, are bound, from the time of the delivery of such execution, to be executed. (2 R. S., 365, § 13.) At common law, such property was bound from the *teste* of the *fi. fa.*; and the statute has only restricted the common law rule, as to time, and afforded protection to *bona fide* purchasers of property, between the time of delivery, and actual levy. (Id., § 17.)

The execution, in this case, came to the hands of the sheriff, on the 29th, and the boat was within his jurisdiction, on the 31st of October, 1862. The boat thereby became bound, by the execution, unless held by the chattel mortgage.

There was no pretence, but the mortgage was valid in its inception. Not being filed, on the 31st of October, 1862, it had no preference, as against said execution, unless the boat was, at that time, in the actual possession of the mortgagee. The subsequent filing did not supersede any rights, which had previously attached, under the execution.

As between mortgagor and mortgagee, the instrument was a valid and binding security, notwithstanding the omission to file. A breach of its conditions, entitled the mortgagee to take possession of the property mortgaged, and, if he did so before any lien of a creditor of the mortgagor, attached, such possession would hold the property. It was shown that the conditions of this mortgage had not been performed, and it is claimed that, the mortgagee took possession of the mortgaged property, for condition broken, on the 9th day of October, 1862, and held it, until the acts complained of. If so, all that remained to the mortgagor, was a naked equity of redemption, not liable to levy and sale, on execution. (*Hill* v. *Beebe*, 13 N. Y., 556; *Sawyer* v. *Eastwood*, 19 Wend, 515; *Fulton* v. *Acker*, 1 Hill, 473; *Dane* v. *Mallory*, 16 Barb., 46; *Burdock* v. *McVanner*, 2 Denio, 170; *Hull* v. *Carnley*, 11 N. Y., 501; *Marsh* v. *Lawrence*, 4 Cow., 461; *Bailey* v. *Burton*, 8 Cow., 347.)

The testimony was, that plaintiff took possession of the boat, on the 9th day of October, 1862; that he put it in charge of an agent, named Hatch, to run for him; that Hatch did run

the boat, making trips to Albany, New York, and Buffalo; was in possession on said 31st day of October, and on the 14th of November. It further appeared, that after October 9th, Jones was, occasionally, on the boat; that the bills of lading and clearances were in his name; and that he once collected some part of the freight money, earned by said boat.

But, it does not follow, because plaintiff and Jones were partners in running the boat, before the 9th of October, that such partnership continued, or that the boat was still in the joint possession of the two; nor is the fact, that Jones was, occasionally on the boat after that, or once collected freight, or that the clearances and bills of lading were in his name, conclusive that the possession of Hatch was collusive, a mere pretence to cover the interest of Jones against his creditors. It would be proper evidence for the consideration of a jury; but not conclusive of a fraudulent intent.

Upon this question, the evidence was conflicting. It was a material question. If the plaintiff had, in good faith, taken actual possession of the boat, under authority of his mortgage, with a view to secure its unpaid balance, and retained it, he was its owner, in possession, at the time of the levy; there was evidence, from which a jury might so find, and, therefore, the plaintiff was entitled to have this question submitted. Refusing such request, and directing a verdict for the defendant, was error.

Judgment should be reversed, and new trial granted, costs to abide the event.

HUNT, Ch. J., WOODRUFF, LOTT, MURRAY, and DANIELS, JJ., were for affirmance, on the grounds stated in GROVER's opinion.

MASON, J., concurred with JAMES, J., for reversal.

Judgment affirmed.